705 So.2d 1132 (1997)
Dr. Judith Block REMET, et al.
v.
Lisa MARTIN, B.C.S.W., et al.
No. 97-CA-0895
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1997.
*1133 Martzell & Bickford, Scott R. Bickford, John R. Martzell, M. Suzanne Montero, Richard A. Filce, New Orleans, for Plaintiffs-Appellants Dr. Judith Block Remet, et al.
Deborah A. Van Meter, Margaret Diamond, Lezley A. Kuntz, McGlinchey Stafford, New Orleans, for Defendants-Appellees Lisa Martin and American Home Assurance Co.
Before KLEES, WALTZER and MURRAY, JJ.
KLEES, Judge.
Dr. Henry Remet was admitted to River Oaks Psychiatric Hospital (hereinafter referred to as "River Oaks") on November 20, 1993. He committed suicide by hanging himself, using his belt and the shower head in his room. The plaintiffs, his wife and daughter, sought and obtained a medical review panel as to Dr. George Daul, the treating psychiatrist, and River Oaks Psychiatric Hospital. The panel concluded Dr. Daul failed to comply with the standard for appropriate care and that if three phone calls were made regarding the patient's suicidal nature, then River Oaks failed to meet the applicable standard for failing to note the phone calls.
A survival action and wrongful death lawsuit was then filed naming Lisa Martin, the social worker, Dr. Daul, River Oaks Psychiatric Hospital, and others as defendants. Dr. Daul and the plaintiffs settled for $100,000.00, the statutory maximum for which a qualified heath care provider is personally liable.
Thereafter, River Oaks was dismissed on a motion for summary judgment. Ms. Martin and River Oaks both filed motions for summary judgment based on the legal theory that settling with one qualified health care provider for the statutory maximum automatically released all other qualified health care providers. The plaintiffs did not oppose the motion for summary judgment filed by River Oaks, however, they did oppose Ms. Martin's motion on the grounds that "she was not entitled to be released from the suit because, among other reasons, she was not a qualified heath care provider." Ms. Martin's motion for summary judgment was granted on January 24, 1997 after a finding that she was a River Oaks employee and, as such, was considered a qualified health care provider entitled to a release. The plaintiffs appeal this granting of the motion for summary judgment in favor of Ms. Martin.
The granting of a motion for summary judgment is reviewed on appeal de novo. Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730. The appellate court must ask the same questions as the trial court, namely whether there are genuine issues of material fact and whether the mover is entitled to judgment as a matter of law.
C.C.P. art. 966 underwent legislative amendments in 1996 and again in 1997, however, these changes are not at issue in this case.[1] The burden is still on the mover to show there are no genuine issues of material fact and the mover is entitled to judgment as a matter of law. Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580. The opposing party may not rely on the mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue of material fact. If the opposing party does not respond, summary *1134 judgment, if appropriate, shall be entered. La. C.C.P. art. 967.
We affirm in part and reverse in part the granting of the summary judgment for Ms. Martin. The mover has not established entitlement to a judgment as a matter of law on the issue of qualified health care provider status. The summary judgment is affirmed finding Ms. Martin to be a River Oaks employee at the time of this incident.

II. WHETHER QUALIFIED HEALTH CARE PROVIDER STATUS CAN BE WAIVED IF NOT RAISED IN THE ANSWER OR THROUGH EXCEPTIONS
The appellant relies primarily on two cases to support the assertion that "qualified health care provider" status is an affirmative defense which can be waived. However, there is no case on point and the Louisiana Medical Malpractice statute is of no help. La. R.S. 40:1299.41, et seq.
In Barraza v. Scheppegrell, 525 So.2d 1187 (La.App. 5 Cir.1988), the court found the failure to file an exception of prematurity waived the defendant's right to obtain a medical review panel under the malpractice statute. The potential conflict between the right to a medical review panel under the statute and the Code of Civil Procedure requiring an exception of prematurity was resolved in favor of the Code of Civil Procedure.
In Simon v. United States, 891 F.2d 1154 (5th Cir.1990), a case relied upon by the appellants, the United States government waived any right to raise the issue of limitation of liability under the Louisiana Medical Malpractice Act because it failed to raise the defense in a timely fashion according to federal rules. Under Fed.R.Civ.P. 8(c), the Louisiana Medical Malpractice Act constitutes an affirmative defense because it is an "avoidance." This, procedural rule, however, has no correlation to Louisiana law.
In our case, Ms. Martin raised the issue of qualified health care provider in a motion for summary judgment. She was not required, either through the statute or the Code of Civil Procedure, to raise it earlier. Under the statute, all malpractice claims shall be reviewed by a medical review panel, a right which can be waived if not raised through an exception of prematurity. Here, Ms. Martin was not obligated to raise an exception to establish her status. Under La. C.C.P. art. 1003, Ms. Martin was obligated to assert all "affirmative defenses" in the answer.[2] "An affirmative defense raises new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits." Webster v. Rushing, 316 So.2d 111, 114 (La. 1975). With Ms. Martin, up until the plaintiffs settled with Dr. Daul, a qualified health care provider, there was nothing which would have the "effect of defeating plaintiff's demand." The status of "qualified health care provider" would not defeat the plaintiffs' demands. Hence, we conclude that the status of a "qualified health care provider" may not be waived, although some of the rights that go with this status may be.

III. WHETHER MS. MARTIN WAS A QUALIFIED HEALTH CARE PROVIDER
The appellant argues Ms. Martin is not an employee of River Oaks and, thus, is not entitled to a qualified health care provider status as such. In the alternative, the appellant argues that if Ms. Martin is an employee, she is not automatically entitled to "qualified" health care provider status. The burden of proof is on Ms. Martin to establish her qualified health care provider status. Goins v. Texas State Optical, Inc., 463 So.2d 743, 744 (La.App. 4 Cir.1985); Chivleatto v. Divinity, 379 So.2d 784 (La.App. 4 Cir.1979).
A. Employee status
*1135 Ms. Martin maintains she was the employee of River Oaks Hospital at the time of this incident and that she is entitled to a qualified health care provider status. The trial judge agreed, thereby dismissing the suit against Ms. Martin on a motion for summary judgment.
The key elements in an employer-employee relationship include the right of control or supervision, the selection and engagement of the workers, the payment of wages, and the power of dismissal. Savoie v. Fireman's Fund Insurance Co., 347 So.2d 188 (La.1977). The independent contractor relationship exists when the work is of an independent nature with the independent contractor using his/her own judgment as to the best way to perform the task. Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972). These issues are often the source of detailed opinions, however, in our case, the facts are not in dispute, leaving room only for judicial interpretation.
Ms. Martin's schedule was controlled by a director and she was a part of a treatment team. Her protocol for treatments had to be based on the Masters and Johnson Sexual Trauma/Compulsivity Program, which was purchased by River Oaks. The director controlled the vacation schedules. Ms. Martin was required to attend certain meetings during the week and was paid through the hospital. The patients were billed through River Oaks. We realize Ms. Martin paid her own taxes, maintained malpractice insurance, and contributed to her office expenses at the hospital, however, these facts are not enough to defeat the amount of control and supervision which River Oaks maintained.
In Royer v. St. Paul Fire and Marine Insurance Company, 502 So.2d 232 (La.App. 3 Cir.), writ denied, 503 So.2d 496 (La.1987), the hospital was not vicariously liable for the acts of a non-employee radiologist. The radiologist was a member of a clinic which contracted with the hospital, the clinic provided their own equipment, the hospital had no supervision over the radiologist (unless the work became substandard), the clinic billed its own patients, no taxes were withheld for the radiologists, and the clinic provided its own malpractice and worker's compensation insurance. Interestingly, however, the hospital had virtually no supervision or control over the radiologists. The clinic provided a radiologist when needed by the hospital. The hospital clearly lacked the control and supervision over the radiologists that River Oaks exerted over Ms. Martin.
The appellants also question whether the general denial to the petition was enough to establish a judicial confession as to independent contractor status. The petition for damages reads in part:
5.
At all times pertinent hereto, defendant Martin was a social worker employed by or under the auspices of River Oaks and was Dr. Henry A. Remet's therapist and made recommendations concerning the treatment of Dr. Henry A. Remet.
The answer was as follows:
V.
Defendant denies the allegations contained in paragraph 5 of plaintiffs' Petition for Damages as written except to admit that defendant Martin is a social worker.
The appellant is correct that a judicial admission in a pleading constitutes "a judicial confession and is full proof against the party making it." Starns v. Emmons, 538 So.2d 275, 279 (La.1989). In our case, the denial of the allegation "as written" cannot be interpreted as a judicial confession to every allegation in the paragraph. The pleadings, at best, are awkward and we are not at liberty to declare the answer a judicial confession of either employee or independent contractor status.
The trial judge was correct in his determination that Ms. Martin was the employee of River Oaks at the time of this incident and this part of the motion for summary judgment is affirmed.
B. Qualified Health Care Provider Status
The more difficult issue presented is whether the employee of a qualified health care provider is automatically a "qualified" *1136 health care provider. The director of the Louisiana Patients' Compensation Fund concluded Ms. Martin was not a qualified health care provider. See Patients' Compensation Fund letter of July 14, 1994.
LSA R.S. 40:1299.41 A(1) defines a health care provider as:
A. As used in this Part:
(1) "Health care provider" means a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified registered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C.A. § 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or an officer, employee or agent thereof acting in the course and scope of his employment.
Thus, Ms. Martin is a health care provider because she is the employee of a corporation and was acting in the course and scope of her employment. The next question deals with her eligibility for "qualified" status and coverage under the act. In order to be "qualified," LSA R.S. 40:1299.42(A)[3] requires (1) filing proof of financial responsibility (as set out in section E) and (2) payment of the surcharge according to R.S. 40:1299.44.[4]
Once the financial responsibility is established for the qualified health care provider, then the annual premium surcharge under R.S. 40:1299.44 must be paid. There shall be no additional surcharges, however, for the employees of a qualified health care provider who are also qualified health care providers themselves. LSA R.S. 40:1299.45 A(2).[5]
In Guidry v. Federline, 537 So.2d 838 (La.App. 5 Cir.1989), two emergency room nurses were deemed "qualified health care providers" entitled to coverage under the malpractice act because certificates of enrollment were filed with the Commissioner of Insurance. The certificates enrolling the employees specifically listed the two nurses.
The appellee argues that the high employee turnover would make it impossible to maintain a current certificate of enrollment. There is no doubt this is true. However, the medical malpractice act only covers "qualified" health care providers. See La. R.S. 40:1299.42. The statute does not automatically grant "qualified" health care provider status to all employees of qualified health care providers.
Accordingly, the judgment of January 28, 1997 granting the Motion for Summary Judgment is reversed and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
MURRAY, J., concurs with reasons.
*1137 MURRAY, Judge, concurring with reasons.
In this case, the plaintiffs were specifically advised by the Patients' Compensation Fund that Lisa Martin was not a qualified health care provider, so Ms. Martin was sued separately while a medical review panel considered the claims against the other providers. While it is unfortunate that her status was not resolved earlier in the litigation, I must agree with the majority's conclusion that neither the Medical Malpractice Act nor the Code of Civil Procedure required Ms. Martin to immediately challenge the PCF's designation.
I also agree that Ms. Martin's denial of plaintiffs' allegation that she was "employed by or under the auspices of River Oaks" is not a judicial confession of independent contractor status, and that under the recent amendments[1] to the Code of Civil Procedure this one issue may now be decided on a motion for partial summary judgment. Furthermore, because I agree that a professional employee of a qualified health care provider does not automatically acquire that status herself, Jackson v. Dunlap, 94-1413 (La.App. 1st Cir. 5/5/95), 654 So.2d 888, writ denied, 95-1343 (La.9/1/95), 658 So.2d 1268, and cases cited therein, I concur in the reversal of the summary judgment dismissing plaintiffs' claims against Lisa Martin.
Since Ms. Martin has not established that she is a qualified health care provider under the Act, we need not consider her claim that plaintiffs' release of one qualified provider entitles all such providers to a judgment of dismissal.
NOTES
[1] See 1997 La. Act No. 483, H.B. No. 1230.
[2] C.C.P. art. 1003 reads:

The answer shall comply with Articles 853, 854, and 863 and, whenever applicable, with Articles 855 through 861. It shall admit or deny the allegations of the petition as required by Article 1004, state in short and concise terms the material facts upon which the defenses to the action asserted are based, and shall set forth all affirmative defenses as required by Article 1005. It shall also contain a prayer for the relief sought. Relief may be prayed for in the alternative.
[3] LSA R.S. 40:1299.42(A) reads in full:

A. To be qualified under the provisions of this Part, a health care provider shall:
(1) Cause to be filed with the board proof of financial responsibility as provided by Subsection E of this section.
(2) Pay the surcharge assessed by this Part on all health care providers according to R.S. 40:1299.44.
(3) For self-insureds, qualification shall be effective upon acceptance of proof of financial responsibility by and payment of the surcharge to the board. Qualification shall be effective for all others at the time the malpractice insurer accepts payment of the surcharge.
[4] The statute on the Patients' Compensation Fund.
[5] LSA R.S. 40:1299.45 A(2) reads:

(2) When, and during such period that, each of the voting shareholders of a professional corporation, or each of the partners of a partnership, and each of their employees eligible for qualification as a health care provider under this Part, is qualified as a health care provider under the provisions of R.S. 40:1299.42(A), such corporation or partnership shall, without the payment of an additional surcharge, be deemed concurrently qualified and enrolled as a health care provider under this Part.
[1] See 1997 La. Acts, No. 483. This amendment is procedural and thus may be applied in a pending case. Kaufmann v. Fleet Tire Service, 97-1428 (La.9/5/97), 699 So.2d 75, vacating and remanding 96-2444 (La.App. 4th Cir. 4/2/97), 691 So.2d 811.