799 So.2d 638 (2001)
Larry Tyrone BRANTLEY, et ux, Plaintiffs-Appellants,
v.
STATE FARM INSURANCE COMPANY, Defendant-Appellee.
No. 35,148-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
James Sharp, Jr., Monroe, Counsel for Appellants.
Crawford & Anzelmo, by Brian E. Crawford, K. Douglas Wheeler, Monroe, Counsel for Appellee.
Before NORRIS, STEWART and GASKINS, JJ.
STEWART, J.
Plaintiffs Larry and Ellen Brantley appeal from the grant of summary judgment in favor of defendant State Farm Insurance Company ("State Farm"). For the following reasons, we reverse and remand.

FACTS
The Brantleys owned a house at 1606 Oaklawn Drive in Monroe. The house was insured by State Farm under a rental dwelling policy and was used as rental property. Because the Brantleys failed to make mortgage payments, on March 12, 1996, the Federal Home Loan Mortgage Corporation ("FHLMC") filed a petition in the 4th Judicial District Court for executory process to seize and sell the property. The district court ordered the Ouachita Parish Sheriff's Office to seize the property, and on March 28, 1996, the sheriff complied with the order and seized the property.
On June 21, 1996, State Farm claims adjuster Lawrence Crumpton met with Mr. Brantley at the home where he investigated two damage claimsa wind damage claim and a vandalism claim. State *639 Farm found $300.00 in wind damage to the home's roof and found $2,227.63 in vandalism damage. Crumpton said in an affidavit that Mr. Brantley told him that the property had been occupied or inhabited within 30 days prior to the date of the claim and that he would not have paid the claim if he knew the house had been unoccupied. On June 24, 1996, State Farm paid the Brantleys by check $50 for the roof damage claim ($300 damage minus $250 deductible) and $1,320.71 for the vandalism claim. The Brantleys stated that they never negotiated these checks because the payment for the vandalism claim was inadequate.
On June 23, 1996, three days prior to the scheduled sheriff's sale, a suspicious fire destroyed the house. Monroe Fire Department investigator Kenneth Gibbs stated in an affidavit that the burned residence "appeared uninhabited and vacated." In his deposition, Mr. Brantley testified that the home was leased to a family, Willie and Janet Allen, at the time of the fire, and that at that time the Allens were "more or less in the process of moving, but they still were staying in the house." He also said that he was unable to contact them after the fire. No tenant has come forward and claimed to have been in the house at the time of the fire. According to State Farm, the property was sold at sheriff's sale on June 26, 1996.
The Brantleys got an estimate from one contractor, W. Robinson Home Care, that repair of the home would cost $57,000. At the time, the Brantleys were living part of the time in Monroe and part of the time in California. Their address in Monroe was 908 Moore Road, a municipal address formerly designated as rural Route 6, Box 459. In his deposition, Mr. Brantley said that mail addressed to the rural address was delivered to the new municipal address because the mailman knew where the mail was supposed to go.
On July 11, 1996, State Farm claim specialist and investigator Wayne Van wrote Mr. Brantley and asked him and Mrs. Brantley to contact Van as soon as possible. This communication, like all of the State Farm communications to the Brantleys, was addressed to the Brantleys' rural route address. The letter bears the legend "CERTIFIED: RETURN RECEIPT REQUESTED" but no certified mail receipt appears in the exhibits to show that the Brantleys received the letter. Van sent the Brantleys a second letter requesting contact on July 29, 1996. Like the first letter, this letter indicates that it was sent by certified mail, but no return receipt appears in the record. On August 15, 1996, Mr. Charles D. Hudson, resident claim superintendent with State Farm, wrote Mr. Brantley and informed him that the insurer was reserving its rights to pay the claim because State Farm's preliminary investigation revealed that the cause of the fire "may be incendiary in origin." This letter does not indicate that it was sent via certified mail. Also on August 15, 1996, Hudson wrote another letter to Mr. Brantley and informed him that his cooperation with State Farm's investigation was required by the insurance agreement and asked him to contact Wayne Van. This letter indicates that it was sent via certified mail, but no return receipt appears in the record. At Mrs. Brantley's deposition, State Farm's attorney showed her a return receipt dated August 17 signed by a "Tina someone." Mrs. Brantley said that she did not know anyone named Tina and that no such person was authorized to receive mail for her.
On August 23, 1996, Van wrote Mr. Brantley and enclosed a blank proof of loss form. This letter does not indicate that it was sent by certified mail. In their depositions, *640 the Brantleys said that they did not receive any of the letters from State Farm.
According to Van, he attempted several times to contact the Brantleys, and finally spoke to Mrs. Brantley by telephone. In an affidavit, Van stated that during this conversation Mrs. Brantley refused to meet with him to discuss the loss or provide a telephone number or address for correspondence concerning the claim. In her deposition, Mrs. Brantley denied this and said that she had spoken several times to representatives of State Farm about the fire claim. She said that she had called her agent, Jimmy Terry, and that a State Farm representative had come to the home and "whatever ... paperwork they had to do, they did it right there at the house when they came over." She also said that she had spoken to Miss Beth Snellings at State Farm about the claim.
On December 3, 1996, Van closed the investigation into the claim for the stated reason that the Brantleys had failed to cooperate in the investigation. Thereafter, State Farm refused to pay the fire damage claim.
On May 30, 1997, the Brantleys filed suit in district court against State Farm. The petition alleged:
That on or about the (sic) 6th day of June 1996 the premises sustained damage by fire and by other means as will be shown on the trial of this case.
On July 2, 1997, State Farm filed an exception of prematurity on the grounds that the Brantleys had not complied with policy requirements concerning inventory, proof of loss and examination under oath. The trial court never ruled on this exception.
On May 21, 1998, State Farm filed a motion for summary judgment. The motion cited several grounds for relief, including allegations that the Brantleys no longer owned the home at the time of the fire, that the Brantleys did not cooperate with State Farm investigators and that the house was vacant and unoccupied at the time of the fire. On August 18, 1998, the Brantleys filed an opposition to the motion; the opposition "pleads herein by reference the depositions given by [Mr. and Mrs. Brantley], a copy of their depositions which are attached to and made a part of this answer." These depositions are included as exhibits to this appeal record and are stamped "filed" on their cover by the Ouachita Parish Clerk on August 18, 1998.
On August 31, 1998, State Farm filed a certified copy of the insurance policy into the record for purposes of deciding the motion for summary judgment. The policy provides, in pertinent part:
RENTAL DWELLING POLICY SPECIAL FORM 3 AGREEMENT
We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.
. . .
Section ICONDITIONS
. . .
2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
a. give immediate notice to us or our agent, and in case of theft, vandalism, or malicious mischief, also to the police;
b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, and keep an accurate record of repair expenditures;

*641 c. prepare an inventory of damaged personal property showing in detail, the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;
d. as often as we reasonably require:
(1) exhibit the damaged property
(2) provide us with records and documents we request and permit us to make copies; and
(3) submit to examinations under oath and subscribe the same;
e. Submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
(1) the time and cause of loss;
(2) interest of the insured and all others in the property involved and all encumbrances on the property;
(3) other insurance which may cover the loss;
(4) changes in title or occupancy of the property during the term of this policy;
(5) specifications of any damaged building and detailed estimates for repair of the damage;
(6) an inventory of damaged personal property described in 2.c.;
(7) records supporting the fair rental value loss.
. . .
11. Abandonment of Property. We need not accept any property abandoned by any insured.
On December 17, 1998, Judge Kostelka (as a judge of the Fourth JDC, prior to his election to this court) signed a partial judgment dismissing the Brantleys' claim under the policy arising out of the fire. The court found that the plaintiffs had no insurable interest in the property on the date of the fire. On January 7, 1999, the Brantleys filed a motion for new trial, explaining the untimely motion by reference to an apparent misdirection by the post office of the notice of judgment. The clerk mailed the notice of judgment to the attorney's office street address, but the attorney had given the clerk the attorney's post office box address for mailing of notice, not his street address. The post office did not deliver the notice to either address; rather, the notice was placed in the post office box of an unrelated person and thus delivery of the notice was delayed.
On January 27, 1999, State Farm filed a second motion for summary judgment; this motion was directed at the Brantleys' tenant damage claims. At a hearing on February 22, 1999, the court ordered the Brantleys to more clearly state their claim for tenant damage, and on February 26, 1999, the Brantleys filed an amended petition alleging that their tenants "did substantial damage to the property causing windows to be broken, holes in the walls and completely destroying the carpet on the floor(s)" among other things.
On March 8, 1999, Judge John Harrison granted the Brantleys' motion for new trial after State Farm agreed that the question of the Brantleys' insurable interest in the property was not a proper issue for summary judgment. On March 16, 1999, Judge Harrison signed the judgment formalizing the ruling at the February 22, 1999 hearing and recognizing that the Brantleys' motion for new trial was timely filed. The judgment does not specify whether this ruling applied to the entire action or only to a part of the action. On his own motion the judge granted an exception of no cause of action against the Brantleys and gave them 10 days to amend *642 their pleadings to state a cause of action. As noted, the Brantleys had already filed their amended petition by the time this judgment was signed.
On May 12, 1999, Judge Jim Dimos signed a judgment granting State Farm's motion for summary judgment on the Brantleys' fire claim on the grounds that the Brantleys were not in compliance with the terms of the insurance contract because they failed to cooperate in the investigation and because they abandoned the property prior to the fire. This judgment was not certified as suitable for immediate appeal under La. C.C.P. art. 1915. The Brantleys filed a motion for new trial, urging that the question of their failure to cooperate was implicitly denied by Judge Kostelka's earlier ruling on State Farm's first motion for summary judgment. They argued that State Farm's first motion concerned both the Brantleys' lack of insurable interest and their failure to cooperate, and because Judge Kostelka granted the motion only as to their insurable interest, he implicitly rejected State Farm's failure to cooperate argument. Because State Farm filed no motion for new trial, the Brantleys argued that the insurer could not rely on that as a basis for the subsequent motion for summary judgment. The Brantleys thus argued that the only issue before the court was the Brantleys' insurable interestwhich the court did not decide and that the court was precluded from considering their failure to cooperate.
On July 13, 1999, Judge Dimos denied the Brantleys' motion for new trial. On September 3, 1999, the Brantleys appealed the dismissal of their fire damage claim. On September 15, 1999, State Farm filed a motion for summary judgment on the Brantleys' remaining claim, the tenant damage claim.
On May 10, 2000, this court, in a published opinion, Brantley v. State Farm, 33,386 (La.App.2d Cir.5/10/00), 760 So.2d 603, dismissed the Brantleys' appeal because it was taken from an uncertified partial final judgment. Thereafter, the case was remanded to the trial court. On August 3, 2000, the Brantleys filed a motion to dismiss State Farm's motion for summary judgment. The Brantleys argued that the issue of tenant damage had been presented in both of State Farm's prior motions for summary judgment and the district court had not granted summary judgment in either previous motion and so the courts had effectively denied this ground for summary judgment. On September 13, 2000, Judge Dimos granted State Farm's motion for summary judgment on the tenant damage claim. This judgment stated "All claims of the Brantleys against State Farm are hereby dismissed with prejudice." The Brantleys filed a motion for new trial, but on November 30, 2000, Judge Dimos denied this motion. On January 22, 2001, the Brantleys filed a motion for appeal. On April 3, 2001, the parties filed a joint motion of partial dismissal, stating that they had settled the tenant damage claim and asking that this court dismiss this portion of the appeal. On May 10, 2001, this court recognized the settlement of this issue, but denied the motion for partial dismissal. The case is now before this court for review.

DISCUSSION
We initially observe that the judgment appealed from in this case dismissed all of the Brantleys' claims against State Farm and thus is properly appealed even in the absence of certification. Because the parties have compromised the tenant damage claim, we will consider the propriety of summary judgment on the fire damage claim.
*643 Although the Brantleys have urged five formal assignments of error, they have argued only one of those assignmentsthe substantive propriety of the granting of the motion for summary judgment. Briefly, however, to avoid confusion on remand, we hold that the trial court's grant of summary judgment on some of the grounds asserted by State Farm does not amount to a rejection of the other theories asserted by State Farm. Plaintiffs' assertion to the contrary is without merit. Further, the question of the Brantleys' insurable interest in the property is not before us at this time.
In Vinson v. Salmon, 34,582 (La.App.2d Cir.5/9/01), 786 So.2d 913 this court explained the standard for the review of rulings on motions for summary judgment:
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA C.C.P. art. 966. The mover has the burden of establishing the absence of a genuine issue of material fact. If the movant will not bear the burden of proof at trial on the matter, the mover is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. LSA C.C.P. art. 966(C)(2).
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden at trial. If he does not produce such evidence, then there is no genuine issue of material fact and the movant is entitled to summary judgment. Article 966(C)(2). Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. NAB Natural Resources v. Willamette Industries, Inc., 28,555 (La. App.2d Cir.8/21/96), 679 So.2d 477.
In Knowles v. McCright's Pharmacy, Inc., 34,559 (La.App.2d Cir.4/4/01), 785 So.2d 101, we explained the consideration given to competing evidence in summary judgment procedure:
Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507 (La.12/08/00), [775 So.2d 1049]; Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226. Furthermore, as noted by the supreme court in Independent Fire Insurance Co., supra, the trial court cannot make credibility determinations on a motion for summary judgment. It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. Smith v. Lynn, 32,093 (La.App.2d Cir.08/18/99), 749 So.2d 692; Harrison v. Parker, 31,844 (La.App.2d Cir.05/05/99), 737 So.2d 160, writ denied, 99-1597 (La.09/17/99), 747 So.2d 565.
In deciding a motion for summary judgment, the court must assume that all of the affiants are credible. Inasmuch as summary judgments deprive the litigants of the opportunity to present their evidence to a jury, they should be granted only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue *644 of material fact in dispute. Independent Fire Insurance Co., supra.

State Farm urges that the trial court correctly granted summary judgment and dismissed the Brantleys' action because the Brantleys failed to cooperate and abandoned the property. We disagree on both points. In accordance with La. C.C.P. art. 966(B)(2), the Brantleys filed an opposition to State Farm's motion for summary judgment and attached their depositions as evidence in support of their claim. In direct contrast to the evidence presented by State Farm, the Brantleys stated in their depositions that they had been in contact with State Farm representatives concerning the fire claim investigation. Moreover, they denied that they received the written communications from State Farm concerning the investigation. Despite the fact that many of the letters from State Farm were labeled as sent by certified mail, no return receipts appear in the evidence that show that the Brantleys received the letters. Mrs. Brantley further explained the difficulty in communicating with State Farm by stating that they lived part of this time in California, and she stated that State Farm was aware of their California address. Mrs. Brantley flatly denied that she had spoken to Wayne Van and had refused to give him contact information or make a statement.
Clearly the evidence on the Brantley's failure to cooperate was conflicting. As we stated in Knowles, supra, the weighing of conflicting evidence has no place in summary judgment procedure. With conflicting testimony on the question of the Brantleys' cooperation, summary judgment was not appropriate.
The evidence concerning whether the property had been abandoned is similarly conflicting. Further, we question the policy language cited by State Farm as authority that the policy does not cover premises that are abandoned. That language is the following:
SECTION ICONDITIONS
. . .
11. Abandonment of Property. We need not accept any property abandoned by any insured.
Although we find no jurisprudence interpreting this provision, we do not believe that it is effective as an exclusion from coverage of a vacant home. However, the policy does contain the following provision:
SECTION ILOSSES NOT INSURED
. . .
We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:
. . .
g. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss....
Although State Farm asserts that the home was vacant because it had been seized by the Sheriff, Mr. Brantley in his deposition said:
Q: When you were out there with Mr. Crumpton [June 21, 1996], were the Allens there?
A: They still were occupying the building.
Q: They had some furnishings there, but were they living there?
A: They still had some furniture.
Q: Were they living there, to your knowledge, at the time you saw Mr. Crumpton?

*645 A: I didn't see them in there, but they hadthey had furniture and stuff in there.
Mrs. Brantley in her deposition said:
Q: When is the last time that you knew they were there actually occupying the house?
A: In June.
Q: Did they move their furnishings out of the house before the fire occurred?
A: Some of their furnishings, but not everything.
Clearly there is conflicting evidence concerning whether the home was occupied within 30 days of the fire. Even though the evidence indicates that the sheriff had seized the property at the time of the fire, the Brantleys maintain that their tenants were still living in the home at that time. This question is therefore not suitable for summary judgment.

CONCLUSION
For the above reasons, the judgment of the trial court granting summary judgment in favor of State Farm is reversed, and this matter is remanded for further proceedings. Costs of this appeal are assessed to State Farm.
REVERSED AND REMANDED.