865 So.2d 265 (2004)
Larry Tyrone BRANTLEY, and Ellen Roberson Brantley, Plaintiff-Appellant,
v.
STATE FARM INSURANCE COMPANY, Defendant-Appellee.
No. 37,601-CA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
*266 James Sharp, Jr., Monroe, for Appellant.
Larry Tyrone Brantley, in Proper Person.
Brian E. Crawford, Monroe, Jefferson B. Joyce, Baton Rouge, for Appellee.
Before WILLIAMS, MOORE and LOLLEY, JJ.
WILLIAMS, J.
The plaintiffs, Larry Tyrone Brantley and Ellen Roberson Brantley, appeal a judgment in favor of the defendant, State Farm Insurance Company ("State Farm"). The trial court found that plaintiffs failed to comply with the terms of the tenant dwelling insurance policy because of their lack of cooperation with the insurer's investigation of their fire damage claim and their abandonment of the premises. For the following reasons, we affirm.

FACTS
Larry and Ellen Brantley owned a house at 1606 Oaklawn Drive in Monroe. The house was used as rental property and was insured under a tenant dwelling policy issued to the Brantleys by State Farm. In March 1996, the Ouachita Parish Sheriff's Office seized the property pursuant to foreclosure proceedings against the Brantleys. On June 23, 1996, three days before a scheduled sheriff's sale of the property, a fire of suspicious origin caused damage to some of the rooms inside the house. On June 26, 1996, the property was sold at a sheriff's sale.
The Brantleys submitted a claim to State Farm and it was assigned to Laurence Crompton, a claims adjuster. After reviewing the fire marshal's report indicating that the fire was of suspicious origin, *267 Crompton contacted James Vickers, a consultant who investigated the origin and cause of fires. On June 28, Crompton and Vickers met at the property, inspected the fire damage and took photographs of the rooms in the house. The rooms did not contain furniture and the house appeared uninhabited. Based on his determination that the fire had caused minimal damage to the property, Crompton estimated the total repair cost for materials and labor was $2,864, less depreciation of $787 and a deductible of $250, for a net repair amount of $1827. Vickers reported there were ten separate points of fire origin, without any evidence of a heat source, and concluded that the fires were set intentionally.
Because the fire was of suspicious origin, the Brantley claim was assigned to Wayne Van, an adjuster in State Farm's special investigative unit. Van's file notes indicated that he called the Brantleys at the telephone number listed in the policy on July 8, 9 and 10, 1996, but did not get an answer. Van telephoned the Brantleys three more times on July 15 and again on July 22, 1996, without an answer. On July 11 and 29, 1996, Van sent letters by certified mail to the Brantleys' policy address requesting a meeting. The letters were returned, unclaimed. According to Van, he received a call from Ellen Brantley about the fire claim on August 5, 1996, but she would not give any mailing address other than the address listed on the policy and she did not agree to submit to an examination under oath or to provide financial information.
On August 15, 1996, State Farm mailed a letter to the Brantleys reserving its right to deny coverage and a letter notifying them of their duty under the policy to cooperate with the insurer's investigation. After the Brantleys did not respond, Van mailed a letter dated December 6, 1996, advising them that State Farm was closing the investigation into the loss because they had failed to cooperate with the insurer to resolve the claim. State Farm later denied payment of the fire damage claim.
The plaintiffs, Larry and Ellen Brantley, filed a petition for damages against the defendant, State Farm, in May 1997. Subsequently, defendant filed a motion for summary judgment alleging that at the time of the fire plaintiffs did not have an ownership interest in the property, and that they had left the premises unoccupied and failed to cooperate with the insurer's investigators. In December 1998, the district court granted a partial summary judgment in favor of the defendant, finding that plaintiffs did not have an insurable interest in the property on the date of the fire. The plaintiffs moved for a new trial and defendant filed a second motion for summary judgment on the issue of plaintiffs' claims for tenant damage. After a hearing, the district court issued a written ruling on March 8, 1999, stating, "the court grants a new trial on the motion for summary judgment filed by defendant." In May 1999, the matter was heard as a new trial on the remaining issues raised by defendant in its original summary judgment motion.
The district court granted the motion for summary judgment on the grounds that plaintiffs did not show that they complied with the terms of the insurance policy in light of the evidence that they had not cooperated with the insurer's investigation and abandoned the property. This judgment was not certified as suitable for immediate appeal under LSA-C.C.P. art. 1915. Plaintiffs filed a motion for new trial on the ground that the court was precluded from considering their failure to cooperate, since that issue was implicitly denied by the court's previous partial summary judgment on the issue of insurable *268 interest. The district court denied the motion for new trial and plaintiffs appealed. This court dismissed the appeal because it was taken from an uncertified partial summary judgment. Brantley v. State Farm Ins. Co., 33,386 (La.App.2d Cir.5/10/00), 760 So.2d 603.
In September 2000, the district court granted defendant's motion for summary judgment on the tenant damage claim and dismissed all of plaintiffs' claims. Plaintiffs' motion for new trial was denied and they appealed. This court reversed the summary judgment in favor of defendant, finding that material issues of fact existed. Brantley v. State Farm Ins. Co., 35,148 (La.App.2d Cir.10/31/01), 799 So.2d 638.
The parties eventually settled the tenant damage claim and trial was scheduled on the fire damage claim. On the day of trial, the parties realized that defendant had not filed an answer to the original petition. Over the plaintiffs' objection, the court allowed defendant's attorney to file a handwritten answer. Plaintiffs filed motions for continuance, asserting their need for time to prepare a motion for summary judgment and to obtain another estimate of damages because a builder had denied that he had provided the estimate previously relied on by plaintiffs. The district court denied the motions for continuance. After a trial, the court rendered judgment in favor of the defendant, finding that plaintiffs had failed to cooperate with the insurer's investigation and abandoned the premises contrary to the policy provisions. Plaintiffs' motion for new trial was denied and they appeal the judgment.

DISCUSSION
Initially, we note that although plaintiffs alleged ten formal assignments of error, those numbered 1, 3, 6, 7 and 9 were not argued in their brief. Thus, those assignments of error are deemed abandoned pursuant to URCA Rule 2-12.4.
Plaintiffs contend the defendant's second motion for summary judgment was in effect an untimely motion for new trial and the court erred in treating the motion as one for summary judgment. Plaintiffs argue that the district court did not issue a ruling on the merits of their motion for new trial. We disagree.
The record shows that the district court granted defendant's original motion for summary judgment on the limited issue of plaintiffs' lack of an insurable interest and did not address the plaintiffs' assertion that there was also an issue of tenant damages raised in their petition. Plaintiffs then filed a motion for new trial and defendant filed a second motion for summary judgment regarding the separate tenant damage claim. There is no indication that defendant sought to change the court's prior ruling through this motion. Thus, the circumstances do not support plaintiffs' contention that defendant's motion was actually a request for a new trial rather than a motion for summary judgment. Plaintiffs' argument lacks merit.
At the February 1999 hearing on plaintiffs' motion for new trial, the district judge took the motion under advisement and instructed defendant to submit a memorandum on the issue of whether plaintiffs possessed an insurable interest in the property at the time of the fire. In response, the defendant's attorney submitted a letter to the district court acknowledging that plaintiffs may have held an insurable interest in the property and that the issue was not suitable for summary judgment. Subsequently, the district court issued a written ruling which stated, "Upon reviewing the law and considering the position of State Farm Insurance Company, the Court grants a new trial on the motion for summary judgment filed by defendant." *269 Based upon the entire record, the most reasonable reading of this language demonstrates that, contrary to the plaintiffs' assertions, the district court ruled on and granted their motion for new trial with respect to the partial summary judgment previously rendered. The plaintiffs have not shown that they were denied their rights to due process and equal protection of the law. The assignment of error lacks merit.

Evidentiary Issue
Plaintiffs contend the trial court erred in excluding a district fire chief's testimony regarding the amount of property damage caused by the fire. Plaintiffs argue that the witness should have been allowed to give an opinion based on his experience as a firefighter.
If scientific, technical or other specialized knowledge will assist the trier of fact to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience or training may testify in the form of an opinion. LSA-C.E. art. 702. A trial judge has much discretion in the determination of whether to accept a witness as an expert and the decision will not be disturbed on appeal absent an abuse of that discretion. Doyle v. Picadilly Cafeterias, 576 So.2d 1143 (La.App. 3rd Cir. 1991).
In the present case, plaintiffs presented testimony by Ralph May, a district chief with the Monroe Fire Department, who had responded to the fire at the property. Chief May testified that he listed in his report an "estimated loss" of $50,000 from the fire and defendant objected to his qualifications to make such an estimate. In response to questioning by the court, May acknowledged that he had received "very little" training in estimating the value of property losses from fires. The court found that the witness had not been trained in evaluating property loss and excluded his testimony regarding estimated damages. After reviewing the record, we cannot say the trial court abused its discretion in excluding the opinion of the witness based on his lack of training. The assignment of error lacks merit.

Procedural Issue
In two assignments of error, the plaintiffs contend the trial court erred in assigning the case for trial even though defendant had not filed an answer to the original petition and in allowing defendant to file a handwritten answer on the day of trial. Plaintiffs argue that the court should have granted their motion for a continuance to allow them time to file a motion for summary judgment or, in the alternative, the court should have granted their motion to strike the answer because the defendant failed to plead any affirmative defenses.
Technical forms of pleading are not required and all allegations of fact in the petition or answer shall be simple and concise. LSA-C.C.P. art. 854. Except as otherwise provided by law, a defendant shall file an answer within fifteen days after service. The court may grant additional time for answering. LSA-C.C.P. art. 1001. Notwithstanding this provision, the defendant may file an answer at any time prior to confirmation of a default judgment. LSA-C.C.P. art. 1002. The answer shall set forth all affirmative defenses. LSA-C.C.P. art. 1005.
On the morning of trial in the present case, the plaintiffs informed the court that defendant had never filed an answer to the original petition and moved for a continuance for an opportunity to file a motion for summary judgment. In response, the court instructed defendant to prepare a handwritten answer for filing and denied the continuance. However, the court ordered a recess until 1:30 p.m. to give plaintiffs' *270 attorney the opportunity to draft and file a motion for summary judgment. Following the recess, plaintiffs' attorney stated that he was unable to prepare a motion for summary judgment, but he moved to strike the answer for failure to plead affirmative defenses. The court denied the motion and trial proceeded.
An answer may be filed at any time prior to obtaining judgment, whether or not the time designated has elapsed. Buruzs v. Buruzs, 96-1247 (La.App. 4th Cir.12/27/96), 686 So.2d 1006. Thus, the trial court did not err in allowing defendant to file an answer on the day of trial. Although they were not granted a continuance, plaintiffs were given a chance to file a motion for summary judgment before trial resumed, but declined. Plaintiffs have not shown they were prejudiced by the trial court's ruling.
An affirmative defense, which must be asserted in the answer, is one raising a new matter that constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits. Remet v. Martin, 97-0895 (La. App. 4th Cir.12/10/97), 705 So.2d 1132. Here, the answer states that "defendant asserts all defenses under the policy, including failure to cooperate, fraud, abandonment of the property and no inhabitants for 30 days before fire." Based upon this record, we cannot say the trial court was clearly wrong in finding that the answer was sufficient and in denying the motion to strike. The assignments of error lack merit.

Insurance Coverage
The plaintiffs contend the trial court erred in denying their motion for new trial. Plaintiffs argue that the evidence presented at trial did not support the court's finding that they failed to cooperate with the insurer or that they abandoned the premises.
A court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder's resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
In the present case, the insurance policy provides in pertinent part:
SECTION I-LOSSES NOT INSURED
* * * *
We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:
* * * *
g. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss.
SECTION I-CONDITIONS
* * * *
2. Your Duties After Loss. In case of a loss to which this insurance may apply, you shall see that the following duties are performed:
* * * *
c. prepare an inventory of damaged personal property showing in detail the quantity, description, actual cash value and amount of loss.
d. as often as we reasonably require:
* * * *
(2) provide us with records and documents we request and permit us to make copies; and

*271 (3) submit to examinations under oath and subscribe the same;
e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
(1) the time and cause of loss;
(2) interest of the insured and all others in the property involved and all encumbrances on the property;
* * * *
(5) specifications of any damaged building and detailed estimates for repair of the damage;
(6) an inventory of damaged personal property described in 2.c.
11. Abandonment of Property. We need not accept any property abandoned by any insured.
In the present case, the defendant's representatives, Crompton and Van, testified that they attempted to contact the plaintiffs by telephone or letter several times without receiving a response. Crompton acknowledged that he received a message that one of the plaintiffs had called on July 3, 1996. However, he stated that when he returned the telephone call a short time later, a machine answered and he left a message. He testified that he did not receive any other calls from plaintiffs.
Van testified that he telephoned plaintiffs many times, but was unable to contact them. He stated that he received one telephone call from Ellen Brantley in August 1996, when she told him to send any correspondence to the rural route address listed on the policy. Van testified that Brantley would not agree to provide any financial information, to meet with him to give a recorded statement or to answer questions under oath.
Larry Brantley testified that tenants were living in the house during 1996, but that he had not spoken to them since the fire and did not know where to find them. Brantley stated that furniture and carpeting had been taken out of the house, but said he did not know who had removed the items. He testified that he called defendant's office one or two times, but was unable to speak to an adjuster about the fire claim. Brantley acknowledged that he did not give defendant an inventory of damaged property or a completed proof of loss form.
Ellen Brantley testified that the tenants who lived in the house paid monthly rent through May 1996, but she produced a photocopy of only one check dated March 1996. Mrs. Brantley stated that she called defendant's office to report the claim for fire damage and spoke to a secretary. She testified that she called and spoke to someone in the claims office the next day. Mrs. Brantley stated that she and her husband traveled to California in July 1996 and that she called the insurer from there in August 1996 to speak with Van, but he was not in the office. Mrs. Brantley testified that she spoke with Van about the fire "a few times," but he said the defendant would not do anything about the fire claim. Both plaintiffs denied receiving any of the letters mailed by defendant.
Chief May testified that when he responded to the fire, he did not see any furniture inside the house and he concluded that the dwelling was not occupied. Entergy utility records showed that there had not been any electricity usage at the property from January 1996 through the date of the fire. Vickers testified that when he inspected the property, the electricity usage meter had been removed from the house.
The trial court considered the evidence, heard the conflicting testimony and weighed the credibility of the witnesses. The record shows that the plaintiffs did *272 not provide the insurer with a sworn proof of loss or an inventory of damaged property, and they did not submit to an examination under oath or provide any of their financial records. Based upon the evidence presented, the trial court could reasonably have found that plaintiffs did not comply with the policy coverage provisions by failing to cooperate with defendant's investigation of the claim and by allowing the house to remain vacant for more than 30 days immediately prior to the loss. Consequently, we cannot say the trial court erred in dismissing plaintiffs' claims for recovery of property damages under the policy. The assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellants, Larry and Ellen Brantley.
AFFIRMED.