| | | |
|---|---|---|
| **BANKERS INSURANCE COMPANY** | * | **NO. 2024-CA-0386** |
| | * | |
| **VERSUS** | * | **COURT OF APPEAL** |
| | * | |
| **EMIII HOLDINGS, LLC** | * | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-04489, DIVISION "H"
Honorable Monique E. Barial, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Dale N. Atkins)

J. Michael Nash
Wayne R. Maldonado
Brett F. Willie
UNGARINO & MALDONADO, LLC
3850 North Causeway Blvd, Suite 1280
Metairie, LA 70002


      COUNSEL FOR PLAINTIFF/APPELLEE, Bankers Insurance Company


Joseph Paul Rumage, Jr.
THE LAW OFFICE OF PAUL RUMAGE
P. O. Box 1174
Denham Springs, LA 70727


      COUNSEL FOR DEFENDANT/APPELLANT, EMIII Holdings, L.L.C.

                                 **REVERSED AND REMANDED**
                                   **DECEMBER 16, 2024**

*DNA*

*RLB*

*DLD*

This dispute stems from an insurance claim filed after Hurricane Ida struck Louisiana on August 29, 2021.[1] Appellant, EMIII Holdings, L.L.C. ("EMIII"), seeks review of the trial court's February 12, 2024 judgment, which granted the Motion for Summary Judgment filed by Appellee, Bankers Insurance Company ("Bankers"); dismissed EMIII's claims against Bankers (asserted in reconvention) with prejudice; and dismissed as moot Bankers' Complaint for Declaratory Judgment. For the following reasons, we reverse the trial court's February 12, 2024 judgment and remand this matter for further proceedings.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**Bankers' May 20, 2022 Complaint for Declaratory Judgment**

On May 20, 2022, Bankers filed a "Complaint for Declaratory Judgment" ("Complaint") in Civil District Court for the Parish of Orleans, wherein it named

---

[1] This Court may take judicial notice of government websites. *Hidalgo v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll. on Behalf of La. State Univ. Health Scis. Ctr.-New Orleans*, 2024-0609, p. 3 (La. App. 4 Cir. 9/25/24), ___ So.3d ___, ___ n.1, 2024 WL 4284307, at *1 (citing *State v. Debose*, 2024-0217, p. 4 (La. App. 4 Cir. 6/13/24), 390 So.3d 971, 975). Accordingly, we take judicial notice of the National Ocean Service: National Oceanic and Atmospheric Administration's website, which states that "Hurricane Ida made landfall as [a] Category 4 hurricane in Lafourche Parish near Port Fourchon, Louisiana . . . . Landfall occurred at 11:55 a.m. on August 29, 2021." *Hurricane Ida: NOS Fiscal Year 2021 Year in Review*, NATIONAL OCEAN SERVICE: NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION, https://oceanservice.noaa.gov/annualreport/2021/hurricane-ida.html#:~:text=Hurricane%20Ida%20made%20landfall%20as,a.m.%20on%20August%2029%2C%202021 (last visited Nov. 18, 2024).

1

EMIII as the sole defendant and explained that EMIII owned property insured by Bankers under Builders' Risk Policy No. 17-0400025453-5-01 (hereinafter referred to as "the insurance policy"). According to Bankers' Complaint, EMIII reported a loss from Hurricane Ida at the insured premises located at 2324 Reverend John Raphael Jr. Way in New Orleans, LA 70113 ("2324 Rev. John Raphael Jr. Way") but failed to provide Bankers with information or to complete an examination under oath as requested by Bankers in its investigation of the claim. Bankers listed the dates it attempted via email to request claim-related documents and schedule EMIII's examination under oath as January 20, 2022; February 1, 2022; February 15, 2022; and February 25, 2022. Additionally, Bankers listed the dates it attempted via written correspondence to request claim-related documents and schedule EMIII's examination under oath as March 25, 2022; April 13, 2022; and May 2, 2022. Attached as exhibits to Bankers' Complaint were copies of the aforementioned emails and written correspondence. Bankers contended that EMIII's failure to cooperate constituted a breach of the terms and conditions of the insurance policy. Accordingly, Bankers requested that the trial court find that no coverage existed and declare coverage "void as the failure to cooperate ha[d] materially prejudiced Banker's [sic] investigation of this hurricane claim."

Also attached to Bankers' Complaint was a copy of the insurance policy, which listed the insured property as 2324 Reverend John Raphael Jr. Way. It listed the policy period as July 9, 2021, through October 9, 2021. It stated, in pertinent part:

> PROJECT LOCATION: 2324 REVEREND JOHN RAPHAEL JR,
> NEW ORLEANS LA 70113

*(single building only; with no permission to occupy in whole or in part)*

**PERMISSION TO OCCUPY (check one)**

[ X ] Permission to occupy is not granted.

. . . .

## AGREEMENT

In return for "your" payment of the required premium, "we" provide the coverage described herein subject to all the "terms" of the Builders' Risk Coverage.

. . . .

## WHAT MUST BE DONE IN CASE OF LOSS

. . . .

4. **Examination** - - "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

5. **Records** - - "You" must produce records, including tax returns and bank microfilms of all canceled checks relating to value, loss, and expense and permit copies and extracts to be made of them as often as "we" reasonably request.

. . . .

9. **Cooperation** - - "You" must cooperate with "us" in performing all acts required by this policy.

. . . .

## ADDITIONAL COVERAGE LIMITATIONS

1. **Occupancy And Use** -- We do not provide coverage under this policy if, without "our" prior written consent, a covered "building or structure" as described under Property Covered is:

    a. occupied in whole or in part;

3

**EMIII's February 15, 2023 Exceptions, Answer, and Reconventional Demand**

On February 15, 2023, EMIII filed a pleading titled "Exceptions, Answer & Reconventional Demand" ("Reconventional Demand"). Therein, in addition to answering Bankers' Complaint, EMIII asserted the exceptions of prematurity, peremption, no cause of action, and no right of action. Additionally, in its Reconventional Demand, EMIII contended that it had taken all actions required by the insurance policy; that its claim for loss filed with Bankers had not yet been resolved; and that it was entitled to compensation from Bankers as outlined in the insurance policy. Specifically, EMIII sought costs to repair the insured property; costs of damage mitigation; and other costs and expenses as allowed by law. EMIII requested that the trial court dismiss Bankers' Complaint and render judgment in EMIII's favor.

**Bankers' September 8, 2023 Motion for Summary Judgment**

On September 8, 2023, Bankers filed its Motion for Summary Judgment, wherein it contended that it was entitled to a summary judgment granting its declaratory judgment based on EMIII's violation of two provisions of the insurance policy, namely (1) the no occupancy provision, and (2) the failure to cooperate with Bankers' investigation of the claim.

In its Motion for Summary Judgment, Bankers explained that after Hurricane Ida made landfall on August 29, 2021, EMIII opened a claim for hurricane-related damages on September 9, 2021, for the property it owns at 2324 Rev. John Raphael Jr. Way. Bankers further explained that it had issued the insurance policy to EMIII covering 2324 Rev. John Raphael Jr. Way with a policy period from July 9, 2021, through October 9, 2021. According to Bankers, EMIII reported damage to the property's roof, siding, doors, and windows, as well as

4

interior water damage. Bankers stated that an independent adjuster inspected the property on September 22, 2021, and October 9, 2021, and issued a report on November 5, 2021. The independent adjuster's report listed the property as a two-story apartment building containing eight units with two of the units occupied and six under construction.

In support of its first argument that EMIII violated the occupancy provision of the insurance policy, Bankers attached as an exhibit the independent adjuster's report, which stated, in pertinent part as described above, that two of the property's units were occupied. Additionally, Bankers contended that in a recorded sworn statement of EMIII taken by Bankers on approximately December 10, 2021, EMIII stated that two of the units in the subject property were occupied at the time of Hurricane Ida and had been occupied for several years. Bankers attached this recorded statement as an exhibit to its Motion for Summary Judgment, but this is not part of the record on appeal. Bankers further attached residential leases for Dominic Lewis and Pedro Costillo, which it contended demonstrated that part of the property was being occupied at the time of Hurricane Ida, but these leases are also not part of the record on appeal. Bankers then pointed to the pertinent sections of the insurance policy, which stated that there was no permission to occupy the property in whole or in part. Bankers asserted that the aforesaid occupancy of two of the units meant that there was no coverage under the insurance policy.

Turning to its second argument, Bankers contended that EMIII had failed to cooperate with its investigation of the claim in violation of the insurance policy thereby rendering the policy void. In particular, Bankers asserted that "after [EMIII] reported its claim for losses attributable to Hurricane Ida, [Bankers]

5

repeatedly requested information/documentation relating to the claim and has repeatedly requested that [EMIII] participate in an examination under oath." However, according to Bankers, EMIII "consistently refused to cooperate and failed to provide the requested documentation and likewise failed to provide an examination under oath to be conducted by [Bankers] which was necessary to the ongoing investigation of [EMIII]'s claim." In support of this argument, Bankers attached as exhibits the emails and written correspondence requesting documents and an examination under oath, which it had also attached to its Complaint (as explained previously). Additionally, in support of this argument, Bankers cited to this Court's Opinion in, *Lee v. United Fire & Cas. Co.*, 607 So.2d 685 (La. App. 4th Cir. 1992), as well as an opinion by the Louisiana Second Circuit Court of Appeal, *Brantley v. State Farm Ins. Co.*, 37,601 (La. App. 2 Cir. 1/28/04), 865 So.2d 265. Bankers contended that these cases supported its proposition that an insured's repeated failure to provide information requested by an insurer violates an insurance contract's cooperation clause and justifies dismissal of the insured's claim.

In support of its Motion for Summary Judgment, Bankers also attached the insurance policy. The trial court set the hearing on Bankers' Motion for Summary Judgment for November 17, 2023.

**<u>EMIII's November 7, 2023 Opposition to Motion for Summary Judgment, and Alternatively Motion to Continue Hearing on Motion for Summary Judgment</u>**

On November 7, 2023, EMIII filed an "Opposition to Motion for Summary Judgment, and Alternatively Motion to Continue Hearing on Motion for Summary Judgment" ("Opposition"). In that part of its Opposition wherein it sought a continuance, EMIII argued that summary judgment is only appropriate after the

6

parties have had a reasonable opportunity for discovery. EMIII contended that there had not yet been a reasonable opportunity for discovery in this matter because discovery could not proceed until the satisfaction of a Streamlined Settlement Program ("SSP") implemented by a Case Management Order ("CMO") issued by the trial court to handle Hurricane Ida claims. EMIII stated that completion of the SSP did not occur until after November 8, 2023.

EMIII argued that even if the trial court were to deem its Opposition untimely (i.e., because EMIII filed it only ten days before the scheduled hearing on Bankers' Motion for Summary Judgment), the trial court nonetheless should not rule in Bankers' favor unless Bankers satisfied its burden of proving that there was no genuine issue as to material fact and that it was entitled to judgment as a matter of law. EMIII contended that Bankers failed to meet its burden of proof because the "undisputed facts" in its Motion for Summary Judgment constituted hearsay and Bankers had no other competent evidence to point out an item of proof that EMIII could not ultimately satisfy at trial. In particular, EMIII asserted that 2314 Rev. John Raphael Jr. Way and 2316 Rev. John Raphael Jr. Way were occupied, not 2324 Rev. John Raphael Jr. Way, and that Bankers had not offered any competent evidence that the occupancy of 2314 and 2316 Rev. John Raphael Jr. Way would void the insurance contract for 2324 Rev. John Raphael Jr. Way. That is, EMIII asserted that the insurance contract only prohibited the occupancy of 2324 Rev. John Raphael Jr. Way, which was distinct from 2314 and 2316 Rev. John Raphael Jr. Way. EMIII further argued that Bankers was in error in its Motion for Summary Judgment by representing that EMIII did not cooperate in the investigation of the insurance claim. To this end, EMIII stated it was examined by Bankers under oath and assisted with the inspection of the property at least twice.

EMIII also stated that while Bankers sought a second examination under oath one month after the first examination under oath, Bankers failed to establish that the second examination was "reasonably" necessary, thus justifying EMIII's failure to participate.

In support of its Opposition, EMIII attached six exhibits: 1) Affidavit of Earl Myers II; 2) Case Management Order; 3) Survey of 2316 and 2324 Rev. John Raphael, Jr., Way; 4) Insurance Contract between EMIII and Bankers; 5) Lease for Pedro Castillo for 2314 Rev. John Raphael, Jr., Way; and 6) Lease for Dominic Lewis for 2316 Rev. John Raphael, Jr., Way.

## November 15, 2023 Order Resetting the Motion for Summary Judgment Hearing

On November 15, 2023, the trial court signed an order, which reset the Hearing on Bankers' Motion for Summary Judgment to January 26, 2024. The order stated:

> This matter is scheduled to come before the court on November 17, 2023. Due to a court scheduling conflict, the Motion for Summary Judgment filed on behalf of Bankers Insurance, LLC[,] needed to be reset.

> The parties participated in the selection of the new court date and the date January 26, 2024[,] at 9:00 am was agreed upon.

> After coordinating the new hearing date, the Court was advised that the matter which caused the scheduling conflict was resolved. The parties were advised of the resolution; however, the attorneys could not agree to either proceed on the original hearing date of November 17, 2023[,] or to reset to January 26, 2024[,] as previously agreed to.

> After a brief telephone conference with court personnel and attorneys Brett Willie and Paul Rumage, the Court on its own Motion hereby resets the matter.

> **Accordingly,**

8

**IT IS ORDERED** that the hearing on the Motion for Summary Judgment as filed on behalf of Bankers Insurance, LLC shall be reset to January 26, 2024, at 9:00 am.

**IT IS FURTHER ORDERED** that this Court will adhere to the filing deadlines as governed by La. C.C.P. art. 966 in accordance with the instant Motion for Summary judgment's original hearing date of November 17, 2023.

Thereafter, the trial court held the hearing on the reset date of January 26, 2024.

## January 26, 2024 Hearing

On January 26, 2024, the trial court held the hearing on Bankers' Motion for Summary Judgment. Counsel for Bankers contended that EMIII's November 7, 2023 Opposition was untimely and should not be considered by the trial court. The trial court agreed and refused to consider EMIII's untimely opposition or to allow counsel for EMIII to argue at the hearing.

In support of the Motion for Summary Judgment, counsel for Bankers argued that EMIII had violated the occupancy provision of the insurance policy. The trial court asked what proof Bankers had that EMIII violated the occupancy provision, whereupon the following colloquy occurred:

> [COUNSEL FOR BANKERS]:
> One, Judge[,] in the insured's recorded statement with the representative of the insurance company, . . . the insured's representative admitted that two of the units were occupied.
>
> THE COURT:
> Is this a four unit?
>
> [COUNSEL FOR BANKERS]:
> [It is] an eight unit apartment building, two story, two of the units -- [it is] a single building -- two of the units were occupied for years, in the recorded statement the insured admits that two of the units had been occupied for years. And we have copies of the leases for those two units from those individuals occupying the premises.
>
> So as such, [that is] also a material breach of the policy, Your Honor. And we would again ask the court deem coverage [sic] and grant Bankers Motion for Summary Judgment.

THE COURT:

Were the leases executed prior to or after the builder's risk insurance was put in place?

[COUNSEL FOR BANKERS]:

. . . .

One of the leases was executed October 20, 2020, another lease was executed on October 31, 2020.

THE COURT:

And the [insurance policy] was put into place when?

[COUNSEL FOR BANKERS]:

I believe the policy had a valid period effective from July 9, 2021[,] to October 9, 2021.

THE COURT:

Well the existence of a lease prior to the [insurance policy] being put in place, [does not] demonstrate that the building was occupied, it just simply indicates that a lease was put in place in advance of the insurance policy being put into place.

What other support do you have in furtherance of that assertion?

[COUNSEL FOR BANKERS]:

Well, we have the insured's recorded statement to the insurance company admitting to such, Your Honor. And we would have been able to get that evidence on examination under oath, which would have been one of the first questions asked, Your Honor, but we were prevented from doing so.

THE COURT:

Do you have an affidavit indicating the existence of the recorded statement and was that attached to the Motion for Summary Judgment?

[COUNSEL FOR BANKERS]:

I [do not] believe we have an affidavit attest[ing] to that.

THE COURT:

Then I cannot consider that.

So do you have anything else that was attached to the Motion for summary Judgment on that issue?

[COUNSEL FOR BANKERS]:

No, Your Honor.

THE COURT:
Okay. So on that issue, you fail.

Thus, the foregoing excerpt demonstrates that the trial court found that Bankers had not met its burden of proof on the occupancy issue.

In further support of the Motion for Summary Judgment, counsel for Bankers explained that Bankers sent four email requests and three written requests for documents and for EMIII to sit for an examination under oath, which "requests were ignored" by EMIII. Counsel for Bankers argued that this non-compliance constituted a material breach of the insurance policy's cooperation provision and prejudiced Bankers in its investigation of EMIII's claim, so as to warrant deeming the coverage voided and granting Bankers' Motion for Summary Judgment. Counsel for Bankers then showed the trial court judge the emails and written correspondence, which the trial court reviewed along with the insurance policy and subsequently stated:

THE COURT:
The letter dated March 25, 2022[,] indicates that this letter is indeed the sixth request to take the client's examination under oath pursuant to the terms of policy. Further it indicates prior dates when they made such written requests; being January 20, 2022, February 1, 2022, February 15, 2022, February 25, 2022, and again on March 10, 2022.

The letter goes on to request that there be a response providing dates that the client is available for examination.

Seventh request was sent on April 13, 2022[,] containing the same information along with the date of the last letter and requesting documents. The previous letter requested documents also.

The eighth request dated May 2, 2022, which is also attached as part of Exhibit C, including those same dates and the same requests for documents.

. . . .

Motion [for] Summary Judgment is granted for those reasons.

In light of the foregoing transcript excerpt, the trial court granted Bankers' Motion

for Summary Judgment on the basis of EMIII's alleged non-compliance with

Bankers' investigation of the claim.

## February 12, 2024 Judgment

On February 12, 2024, the trial court signed a judgment, which stated, in

pertinent part:

> This matter came before the Court on the 26th day of January 2024 on Bankers Insurance Company's Motion for Summary Judgment.
>
> . . . .
>
> Considering the pleadings, motions, memoranda, exhibits, arguments of counsel, and the law, and for the reason orally assigned at the hearing:
>
> **IT IS ORDERED, ADJUDGED AND DECREED** that the Motion for Summary Judgment filed by Bankers Insurance Company be, and is hereby **GRANTED.** All of the claims asserted against Bankers Insurance Company by Plaintiff in Reconvention, EMIII Holdings, LLC, are hereby dismissed with prejudice.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED**, that Bankers Insurance Company's Complaint for Declaratory Judgment is dismissed as moot.

EMIII's timely appeal followed.

## ASSIGNMENTS OF ERROR

In its brief to this Court, EMIII asserts three assignments of error.

Specifically, it contends:

1.  The Trial Court made an error of fact when it ruled that the occupancy of 2314 and 2316 Rev. John Raphael, Jr., Way, New Orleans, LA was a breach of the contract that required 2324 Rev. John Raphael, Jr., Way, New Orleans, LA[,] to remain unoccupied.

2. The Trial Court made an error of fact when it ruled that the occupancy of 2314 and 2316 Rev. John Raphael, Jr., Way, New Orleans, LA annulled the contract for insurance for 2324 Rev. John Raphael, Jr., Way, New Orleans, LA.

3. EMIII Holdings, L.L.C.[,] satisfied all of its obligations and duties under its contract with Bankers Insurance. No contract required EMIII Holdings to allow monthly inspections of the insured propwerty [sic] after Bankers Insurance inspected the property.

Before considering the merits of EMIII's assignments of error, we begin with the standard of review and principles applicable to the summary judgment process.

## DISCUSSION

## Summary Judgment Principles and Standard of Review

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id.* A trial court grants a motion for summary judgment if "[a]fter an opportunity for adequate discovery," the mover's "motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment "rests with the mover." La. C.C.P. art. 966(D)(1). Specifically, "[t]he party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Haynes v. Sewerage & Water Bd. of New Orleans*, 2023-0678, p. 13 (La. App. 4 Cir. 7/31/24), ___ So.3d ___, ___, 2024 WL 3593653, at *6 (quoting *LZM Props., LLC v. Priv. Connection Prop., Inc.*, 2023-0707, 0708, p. 14 (La. App. 4 Cir. 4/25/24), 390 So.3d 861, 871). This Court has previously explained that "'[a] genuine issue is' defined as 'a triable issue.'" *Id.* (quoting *LZM Props., LLC*, 2023-

13

0707, 0708, p. 14, 390 So.3d at 872). More particularly, "an issue is genuine if reasonable persons could disagree" about it. *Id.* at pp. 14-15, ___ So.3d at ___, 2024 WL 3593653, at *6 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872). "[T]here is no need for a trial on [an] issue," however, if "reasonable persons could reach only one conclusion" after reviewing "the state of the evidence." *Id.* at p. 14, ___ So.3d at ___, 2024 WL 3593653, at *6 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872). A fact "whose 'existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery'" is considered a material fact. *Id.* A material fact is further defined as one that "potentially insure[s] or preclude[s] recovery, affect[s] a litigant's ultimate success, or determine[s] the outcome of the legal dispute." *Id.* A court looks at "the substantive law applicable to the case" to determine if a particular disputed fact is material or not "because the applicable substantive law determines materiality." *Id.*

If the movant proves "that there is no genuine issue of material fact," thereby satisfying the initial burden of proof, at that point "the burden shifts to the party opposing summary judgment to present factual support sufficient to show he [or she] will be able to satisfy the evidentiary burden at trial." *Id.* at p. 14, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872). If the party moving for summary judgment "will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment," then "the mover's burden on the motion does not require him [or her] to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense."

14

La. C.C.P. art. 966(D)(1). Only once "the motion has been made and properly supported" does "the burden shift[] from the mover to the adverse party." *Haynes*, 2023-0678, p. 15, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 15, 390 So.3d at 872).

When the burden shifts, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). To produce such support, "[the] adverse party may not rest on the mere allegations or denials of his [or her] pleading, but his [or her] response, by affidavits or as otherwise provided . . . , must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). In considering a motion for summary judgment, "the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent." *Haynes*, 2023-0678, p. 15, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 16, 390 So.3d at 872). Once the burden shifts, if the party opposing the motion fails to establish the existence of a genuine issue for trial, "summary judgment, if appropriate, shall be rendered against him [or her].'" La. C.C.P. art. 967(B). "This is because '[w]hen the party opposing the motion for summary judgment fails to provide factual evidence sufficient to establish that he [or she] will be able to satisfy his [or her] evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment is appropriate.'" *Haynes*, 2023-0678, p. 15, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 16, 390 So.3d at 872).

On appeal, appellate courts review a trial court's ruling on a motion for summary judgment *de novo* and "use[] the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Id.* at p. 16, ___ So.3d at ___, 2024 WL 3593653, at *7 (quoting *LZM Props., LLC*, 2023-0707, 0708, p. 16, 390 So.3d at 872-73). That is, to answer whether summary judgment was appropriate, an "appellate court[] ask[s] the same questions the trial court does," particularly "whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* (quoting *LZM Props., LLC*, 2023-0707, 0708, pp. 16-17, 390 So.3d at 872).

Before looking to the substantive law to determine whether the trial court did or did not err in granting Bankers' Motion for Summary Judgment, we discuss a preliminary matter. As stated previously, the trial court declined to consider EMIII's Opposition on the basis of untimeliness, and this Court must also decide whether it is legally appropriate to consider it in our resolution of this appeal.

**Whether the Trial Court Erred in Refusing to Consider EMIII's Opposition and Whether this Court Should Consider It**

As previously stated, EMIII filed its Opposition on November 7, 2023, which was only ten days before the hearing on Bankers' Motion for Summary Judgment was scheduled to take place on November 17, 2023). This was untimely based on the plain language of La. C.C.P. art. 966(B)(2), which requires an opposition to a motion for summary judgment to be filed at least fifteen days before the scheduled hearing. On November 15, 2023, "[d]ue to a court scheduling conflict," the trial court signed an order, which reset the hearing on Bankers' Motion for Summary Judgment to January 26, 2024, but ordered that the trial court would "adhere to the filing deadlines as governed by La. C.C.P. art. 966 in

16

accordance with the instant Motion for Summary Judgment's original hearing date of November 17, 2023." Bankers contends in its brief to this Court that despite the rescheduled, later hearing date, EMIII's Opposition was nonetheless untimely.

Outlining the deadlines regarding motions for summary judgment, La. C.C.P. art. 966 provides, in pertinent part:

> B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
>
> . . . .
>
> (2) Except for any document provided for under Subsubparagraph (A)(4)(b) of this Article, any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313(A)(4) not less than fifteen days prior to the hearing on the motion.

La. C.C.P. art. 966(B)(2). In interpreting this provision the Louisiana Supreme Court has held that because of the mandatory language contained therein (i.e., use of the word "shall") and its legislative history, the courts cannot extend the deadline to file an opposition to a motion for summary judgment:

> The clear and unambiguous language of Article 966(B)(2) says that, absent the consent of the parties and the court, an opposition *shall* be filed within the fifteen-day deadline established by the article. The word "shall" is mandatory. La. R.S. 1:3.[2] Under well-established rules of interpretation, the word "shall" excludes the possibility of being "optional" or even subject to "discretion," but instead means "imperative, of similar effect and import with the word 'must.'" [*La.*] *Fed'n of Tchrs. v. State*, 2013-0120 (La. 5/7/13), 118 So.3d 1033, 1051. This interpretation also does not lead to absurd consequences. Summary judgments are intended "to secure the just, speedy, and inexpensive determination of every action." La. [C.C.]P. art. 966(A)(2). Limiting judicial discretion by setting a firm deadline for filing an opposition furthers this end. That is a rational legislative choice and must be applied as written.

---

[2] Louisiana Revised Statutes 1:3 states, "The word 'shall' is mandatory and the word 'may' is permissive."

> The legislative history of Article 966(B) reinforces our interpretation of its clear wording. The 2015 amendment removed language that expressly gave the trial court the discretion, upon a showing of "good cause," to afford additional time to oppose a motion for summary judgment. By removing the discretionary language and replacing it with mandatory language, we must assume the legislature intended to change the law to eliminate the previously afforded discretion. "[W]hen the legislature changes the wording of a statute, it is presumed to have intended a change in the law." *Borel v. Young*, 2007-0419 (La. 11/27/07), 989 So.2d 42.

*Auricchio v. Harrison*, 2020-01167, pp. 4-5 (La. 10/10/21), 332 So.3d 660, 663 (fourth alteration in original). *See also Ausbon v. Omni Hotels Mgmt. Corp.*, 2023-0589, pp. 4-5 (La. App. 4 Cir. 4/2/24), ___ So.3d ___, 2024 WL 1403280, at *2. In *Auricchio*, the Louisiana Supreme Court further explained that "prejudice is irrelevant" in determining whether to accept a late-filed opposition to a motion for summary judgment because La. C.C.P. art. 966(B)(2) "mandates compliance without regard to cause or prejudice." 2020-01167, p. 5, 332 So.3d at 663.

The Louisiana Supreme Court also explained in *Auricchio* that in instances where the party with the untimely opposition also sought a continuance, the trial court can "consider[] equitable concerns and continue[] the summary judgment hearing for 'good cause' under [La. C.C.P. art.] 966(C)(2)" but that "all discretion to consider [a] late-filed opposition [is] eliminated" if the trial court denies the request for a continuance. 2020-01167, p. 5, 332 So.3d at 663. As previously stated, a summary judgment is to be granted only "[a]fter an opportunity for adequate discovery." La. C.C.P. art. 966(A)(3). However, this "does not grant a party the absolute right to delay a decision on a motion for summary judgment until all discovery is complete." *Succession of Hickman*, 2022-0730, p. 8 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 591 (citing *Francois v. Ports Am. La., L.L.C.*, 2020-0440, p. 4 (La. App. 4 Cir. 3/10/21), 314 So.3d 894, 897). *See also Ellis v.*

18

*La. Bd. of Ethics through State*, 2017-0385, p. 6 (La. App. 1 Cir. 11/1/17), 233 So.3d 722, 727 (stating that "[t]here is no absolute right to delay action on a motion for summary judgment until discovery is completed" (citing *Vanderbrook v. Coachmen Indus., Inc.*, 2001-0809, p. 8 (La. App. 1 Cir. 5/10/02), 818 So.2d 906, 911)).

Thus, if the party seeking a continuance alleges that discovery is incomplete, the "trial court has the discretion either to hear the summary judgment motion or to grant a continuance to allow further discovery." *Succession of Hickman*, 2022-0730, p. 7, 359 So.3d at 590 (citing *Roadrunner Transp. Sys. v. Brown*, 2017-0040, p. 11 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1272). Within that "procedural context, a trial court's choice to hear a motion for summary judgment or to grant a continuance is reviewed under an abuse of discretion standard." *Id.* (citing *Roadrunner Transp. Sys.*, 2017-0040, p. 11, 219 So.3d at 1272-73). This Court has listed certain factors to consider when ruling on a claim of inadequate discovery: (1) if the party seeking the continuance based on inadequate discovery was ready to go to trial; (2) if that party indicated what additional discovery was needed; (3) if that party took any steps to conduct additional discovery during the period between the filing of the motion and the hearing on it; (4) if the party raised the discovery issue in the trial court prior to the entry of the summary judgment; and (5) if circumstances beyond the party's control hindered discovery. *Id.* at p. 8, 359 So.3d at 591 (citing *Roadrunner Transp. Sys.*, 2017-0040, pp. 11-13, 219 So.3d at 1273-74).

Additionally, in determining whether to grant a continuance of a summary judgment hearing on the basis of inadequate discovery, a court should consider whether the party seeking the continuance filed an affidavit showing why it could

19

not justify its opposition as required by La. C.C.P. art. 967. *Ellis*, 2017-0385, p. 6, 233 So.3d at 727 (citing *Vanderbrook*, 2001-0809, p. 8, 818 So.2d at 911). Louisiana Code of Civil Procedure Article 967(C) provides:

> C. If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

That is, "[t]he mere claim by an opponent to a motion for summary judgment that he does not have in his possession the facts and information necessary to counter such a motion will not defeat a summary judgment motion." *Vanderbrook*, 2001-0809, p. 8, 818 So.2d at 911 (first citing La. C.C.P. art. 967; and then citing *Waddell v. Bickham*, 431 So.2d 59, 61 (La. App. 1st Cir. 1983)). If the party seeking the continuance failed to comply with the provisions of La. C.C.P. art. 967(C) and did not file such an affidavit then this weighs against finding an abuse of the trial court's discretion. *See Ellis*, 2017-0385, p. 7, 233 So.3d at 727.

Even in instances where the trial court continues a motion for summary judgment hearing, that decision must be on the basis of good cause so as to provide the opponent with additional time to file its opposition. That is, if the hearing is continued for some other reason unrelated to good cause, then this does not allow a party additional time to file its opposition to the motion for summary judgment. For example in *Ulfers Development, LLC v. A & C Holdings, LLC*, the trial court decided to leave open the hearing on a motion for summary judgment "to address two discrete issues at a later date," and the Louisiana Fifth Circuit Court of Appeal concluded that this decision "did not constitute a 'good cause' continuance for the purposes of giving defendants additional time to file their original opposition

materials." 2022-268, pp. 7-88 (La. App. 5 Cir. 3/29/23), 360 So.3d 105, 110-11. As in *Ulfers*, in the matter *sub judice*, the trial court continued the hearing on Bankers' Motion for Summary Judgment but did so on the basis of a court scheduling conflict, not as a grant of EMIII's request for a continuance. Thus, the trial court's postponement of the hearing did not constitute a good cause continuance by which EMIII received additional time to file its Opposition.

Accordingly, we must determine whether the trial court abused its discretion in refusing to grant EMIII's request for a continuance on the alleged basis of inadequate discovery. To do so, we apply the five above-listed factors that a court should consider when ruling on a request for a continuance on the basis of inadequate discovery. First, the record does not reflect whether EMIII was ready for trial; but, of note, the case had not been set for trial when Bankers motioned for summary judgment nor had any discovery deadlines been set. *See Succession of Hickman*, 2022-0730, p. 9, 359 So.3d at 591 (finding it unlikely that either party was ready for trial because the case had not been set for trial nor had any discovery deadlines been set at the time of the filing of the motion for summary judgment). Second, EMIII did not indicate in its Opposition what additional discovery it needed. Even in its brief to this Court EMIII has not specified what other discovery it would have needed to adequately oppose Bankers' Motion for Summary Judgment. Third, EMIII did not take any steps to conduct additional discovery during the period between Bankers filing its Motion for Summary Judgment and the hearing on it. Fourth, EMIII did raise the discovery issue in the trial court prior to the entry of the summary, specifically ten days before the hearing on Bankers' Motion for Summary Judgment was originally scheduled to occur. Fifth, EMIII contends that the CMO restricted it from conducting discovery. EMIII is correct

21

that the CMO limited discovery by stating: "IT IS FURTHER ORDERED that all other discovery is stayed until certification of the completion of the SSP." However, the CMO further stated that "the Special Master may authorize limited formal discovery during the SSP in extraordinary circumstances" and that "[t]he parties are encouraged to make requests for limited discovery in complex cases when necessary to effectively participate in the SSP outlined herein." Thus, the CMO did not entirely restrict discovery; and, in requesting a continuance of the summary judgment hearing, EMIII neither alleged nor provided proof that it sought authorization for discovery from the Special Master and was denied same at any point in time, let alone after Bankers filed its Motion for Summary Judgment. Moreover, as Bankers points out in its appellee brief, its Motion for Summary Judgment was based, in pertinent part, on EMIII's lack of cooperation with its pre-suit investigation as consistent with the terms of the insurance policy. That is, EMIII's alleged lack of cooperation occurred prior to suit even being filed on May 20, 2022; and the CMO did not limit discovery until a lawsuit was filed thereby bringing a disputed claim under the purview of the CMO, such that the CMO cannot not serve as a basis to justify EMIII's non-compliance with the pre-suit investigation. The discovery restrictions of the CMO are irrelevant to resolution of whether EMIII did or did not cooperate. In light of the foregoing, we find that the five factors weigh in favor of finding that the trial court did not abuse its discretion in denying EMIII's request for a continuance.

Of further note, EMIII did not file an affidavit in compliance with La. C.C.P. art. 967(C) showing why it could not justify its opposition as required by La. C.C.P. art. 967. This serves as further justification for our finding of no abuse of discretion on the part of the trial court in refusing to grant EMIII's request for a

continuance on the basis of inadequate discovery. While one might argue that there was no prejudice to Bankers stemming from the untimely opposition because the hearing on its Motion for Summary Judgment was ultimately held over two months after EMIII filed its Opposition, as the Louisiana Supreme Court stated in *Auricchio*, "prejudice is irrelevant" in determining whether to accept a late-filed opposition to a motion for summary judgment because La. C.C.P. art. 966(B)(2) "mandates compliance without regard to cause or prejudice." 2020-01167, p. 5, 332 So.3d at 663. Thus, the trial court was correct in refusing to consider EMIII's late-filed Opposition and the documents attached thereto; and we likewise we refuse to consider EMIII's untimely Opposition and supporting documents.

## **Whether Bankers Met Its Initial Burden of Proving it Was Entitled to Summary Judgment – Non-Compliance Issue**

Even without EMIII's Opposition to Bankers' Motion for Summary Judgment, Bankers had the burden of establishing that there were no genuine issues of material fact and that it was entitled to summary judgment as a matter of law. *See Ulfers*, 2022-268, p. 8, 360 So.3d at 111 (first citing La. C.C.P. art. 966(D)(1); and then citing *Freeman v. Ochsner Clinic Found.*, 2021-401, p. 5 (La. App. 5 Cir. 2/23/22), 362 So.3d 720, 724). That is, "[t]he failure to file an opposition does not automatically require that the motion for summary judgment be granted, as the initial burden of proof is on the mover." *Auricchio*, 2020-01167, p. 5, 663 n.2 (first citing *Crockerham v. La. Med. Mut. Ins. Co.*, 2017-1590, p. 5 (La. App. 1 Cir. 6/21/18), 255 So.3d 604, 608; and then citing La. C.C.P. art. 966(B)(1)). Therefore, we next turn our discussion to determining whether Bankers proved that it was entitled to summary judgment as a matter of law. As Bankers suggests doing in its brief to this Court, we review EMIII's assignments of error

out of order by beginning with its third assignment of error and Bankers' argument that EMIII's non-compliance with its investigation voided the insurance policy.

The issue in this appeal of a summary judgment is whether there is a genuine issue of material fact as to insurance coverage. "Interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved by a motion for summary judgment." *United Home Care, Inc. v. Simpson*, 54,797, p. 5 (La. App. 2 Cir. 11/16/22), 351 So.3d 904, 908 (first citing *Landry v. Progressive Sec. Ins. Co.*, 2021-00621, p. 6 (La. 1/28/22), 347 So.3d 712, 716; and then citing *Bilyeu v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 50,049, p. 8 (La. App. 2 Cir. 9/30/15), 184 So.3d 69, 74). As this Court has explained, "[t]he purpose of the cooperation clause" in an insurance policy "is to require the insured to disclose all of the facts within his [or her] knowledge, and otherwise aid the company to determine its liability under the policy." *Trosclair v. CNA Ins. Co.*, 1993-1741 (La. App. 4 Cir. 5/17/94), 637 So.2d 1168, 1170 (quoting *Freyou v. Marquette Cas. Co.*, 149 So.2d 697, 702 (La. App. 3d Cir. 1963)). As the Louisiana First Circuit Court of Appeal has described it, "[a] cooperation clause protects the insurer against fraud by enabling it to obtain relevant information concerning the claimed loss while the information is fresh." *McCartney v. Shelter Mut. Ins. Co.*, 2017-1398, p. 4 (La. App. 1 Cir. 7/10/18), 255 So.3d 1060, 1062 (citing *Johnson v. Geovera Spec. Ins. Co.*, 657 Fed. Appx. 301, 304 (5th Cir. 2016)). Louisiana courts have held that violation of a cooperation clause, including the failure to submit to an examination under oath or the refusal to produce documentation, constitutes a material breach of an insurance contract and a defense to a suit on the policy. *Id.* (first citing *Lee*, 607 So.2d at 688; and then citing *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. Appx. 162, 165 (5th Cir. 2012)). In so holding, however,

the courts should be mindful that "a cooperation clause is not an escape hatch for the insurer to flee liability for trivial policy violations, and dismissing a suit for breach of a cooperation clause is a draconian remedy." *Id.* at p. 5, 255 So.3d at 1062 (first citing *Beasley v. GeoVera Specialty Ins. Co.,* No. 2013-395, 2015 WL 2372328, at *3 (E.D. La. May 15, 2015); then citing *Jackson v. State Farm Fire & Cas. Co.*, No. 2006-7202, 2010 WL 724108, at *8 (E.D. La. Feb. 22, 2010); and then citing *Lee*, 607 So.2d at 685). Accordingly, for a policy to be deemed void on the basis of non-compliance with a cooperation clause, the insurer must demonstrate that it made "a diligent effort to obtain the requested information," and the insurer bears the burden of proving that the breach of the cooperation clause was "both material and prejudicial." *Id.* (citations omitted). *See also Williams v. Lowe*, 2002-355, 356, p. 5 (La. App. 5 Cir. 10/16/02), 831 So.2d 334, 336 (citing *Desadier v. Safeway Ins. Co.*, 1997-1412, p. 5 (La. App. 3 Cir. 4/8/98), 712 So.2d 925, 928). Thus, when an insurance company asserts a denial of coverage based on the insured's refusal to cooperate, a central question for the courts to consider is whether there was prejudice to the insurer. *Trosclair*, 1993-1741, 637 So.2d at 1170. If the insurer argues general prejudice but does not show how it was prejudiced or any particular prejudice, then the insurer has not met its burden of proof. *Id.*, 637 So.2d at 1170-71.

For example, in *Trosclair*, this Court reversed the trial court's grant of summary judgment in favor of the insurer, Transportation, stating that while Transportation had "argued general prejudice," it had "not shown how it [was] prejudiced, nor . . . any particular prejudice." 637 So.2d at 1170. Similarly, in *McCartney*, the Louisiana First Circuit Court of Appeal ("First Circuit"), reversed the trial court's grant of summary judgment in favor of the insurer, Shelter,

partially on the basis of the prejudice issue. 2017-1398, p. 7, 255 So.3d at 1064. In support of its motion for summary judgment, Shelter attached the affidavit of Sonya White ("Ms. White"), who was the claims representative tasked with investigating the claim of the insureds, the McCartneys. *Id.* at p. 5, 255 So.3d at 1063. In her affidavit, Ms. White attested that "the McCartneys 'failed to provide the information requested and failed to give an examination under oath.'" *Id.* at p. 6, 255 So.3d at 1063. She further attested that "[t]he ability to investigate and investigate early is critical," and that the "the inability to do so substantially prejudiced Shelter's investigation into the McCartneys' claim." *Id.* The First Circuit concluded this was insufficient, noting that "the record contains no evidence suggesting Shelter was prejudiced by any action or inaction by the McCartneys." *Id.* at p. 7, 255 So.3d at 1064.

Additionally, "[w]hether an insured breached the duty of cooperation is a factual inquiry." *McCartney*, 2017-1398, p. 5, 255 So.3d at 1063 (citing *Breaux v. Cozy Cottages, LLC*, 2014-486 (La. App. 3 Cir. 11/12/14), 151 So.3d 183, 190).[3] Louisiana "[c]ourts have allowed an insured to avoid dismissal upon finding the insured had a reasonable explanation for his actions." *McCartney*, 2017-1398, p. 5, 255 So.3d at 1063 (first citing *Beasley*, 2015 WL 2372328, at *4; and then citing *Freyou*, 149 So.2d at 700). Thus, the evidence to support coverage being voided should also establish why the insured failed to correspond and cooperate with the insurance company. *See Williams*, 2002-355, p. 7, 831 So.2d at 337. For example, in *Brantley v. State Farm Ins. Co.*, the Louisiana Second Circuit Court of Appeal ("Second Circuit") noted that while the insurer, State Farm, sent its letters

---

[3] We note for purposes of this citation that on Westlaw the *Breaux* opinion provides the docket number as "2014-486" in two places and "14-597" in another spot. It is unclear which docket number is correct.

requesting cooperation from the insureds via certified mail, the record contained no return receipts to show that the insureds actually received the letters, and the insureds denied having received written communications from their insurer regarding the investigation. 35,148, p. 12 (La. App. 2 Cir. 10/31/01), 799 So.2d 638, 644. In part, on the basis that the evidence on the insureds' failure to cooperate was conflicting, the Louisiana Second Circuit Court of Appeal reversed the trial court's grant of summary judgment in favor of State Farm. *Id.* at p. 14, 799 So.2d at 645.

Bankers cited to *Lee* in its Motion for Summary Judgment and its brief to this Court as support for voiding coverage in this matter, so we find it helpful to this analysis to summarize that case. In *Lee*, this Court acknowledged that denial of coverage on the basis of non-compliance "is a draconian remedy which [the Court] do[es] not ordinarily favor," but then provided a detailed chronology of events to demonstrate support for the result in that case. 607 So.2d at 685-86. The chronology included not only the insurer's numerous attempts to obtain a sworn statement and information from the insureds, but also multiple attempts by the trial court to secure same. *Id.* Before dismissing the insureds' case, the trial court even gave them two final opportunities to comply and warned them that the court was "almost at that point" of dismissal and that they would "face the possibility of dismissal with prejudice" for continued non-compliance. *Id.*, 607 So.2d at 686. In affirming the trial court's ultimate dismissal of the insureds' suit, this court concluded its opinion by saying, "If a trial court may not dismiss a case with prejudice under circumstances involving as much prolonged wilfulness and bad faith as exist in this case, then discovery rules and insurance policy provisions are meaningless." *Id.*, 607 So.2d at 688-89.

27

In the matter *sub judice*, Bankers' Motion for Summary Judgment alleged that EMIII's failure to cooperate with the investigation of the claim, including its failure to provide the requested information, its failure to provide requested documents, and its failure to participate in an examination under oath, "materially prejudiced Bankers' investigation of the claim." Bankers provided no further information in its Motion for Summary Judgment nor in any exhibits attached thereto as to how it was prejudiced or what particular prejudice it experienced as a result of EMIII's alleged non-compliance. Rather, Bankers' Motion for Summary Judgment merely argues general prejudice as in *Trosclair* and *McCartney*. As in those cases, we find that this general allegation of prejudice was insufficient to grant summary judgment in Bankers' favor and thereby impose such "a draconian remedy" on EMIII (i.e., voiding its insurance coverage) for its alleged non-cooperation.

Despite Bankers' citation to *Lee* in support of the grant of summary judgment in this matter, we find *Lee* so distinguishable factually and procedurally from the matter *sub judice* that it cannot and should not serve a basis to affirm the trial court's grant of Bankers' Motion for Summary Judgment. Even though Bankers submitted its emails and written correspondence as proof of EMIII's non-compliance, unlike in *Lee*, EMIII has not also ignored court orders to comply. Moreover, as in *Brantley*, although Bankers sent its letters requesting cooperation from EMIII via certified mail, the record contains no return receipts to show that EMIII actually received the letters. There is also no proof EMIII received the emails from Bankers. Both the written correspondence and the emails were addressed to EMIII's counsel, so it is unclear whether EMIII itself actually knew about the requests. This indicates that there remains a question of fact about

whether EMIII had a reasonable explanation for its actions. In sum, we conclude that there is a genuine issue of material fact regarding EMIII's alleged non-compliance clause with the insurance contract and as to whether Bankers was prejudiced by EMIII's alleged non-compliance.

## Whether Bankers Met Its Initial Burden of Proving it Was Entitled to Summary Judgment – Occupancy

In EMIII's first two assignments of error, EMIII argues that the trial court erred in ruling that the occupancy of 2314 and 2316 Rev. John Raphael Jr. Way breached the contract and annulled the contract of insurance for 2324 Rev. John Raphael Jr. Way. As Bankers observes in its brief, the trial court's oral reasons for ruling at the January 26, 2024 hearing demonstrate that the trial court did not grant Bankers' Motion for Summary Judgment on this basis. Bankers contends that, for that reason, the occupancy issue and assignments of errors numbers one and two are "irrelevant to this [a]ppeal" and that any argument regarding same "should be disregarded." Bankers makes no further argument about these assignments of error and the occupancy issue.

Nonetheless, we choose to address this issue. Bankers contended that its evidentiary support for its argument that EMIII violated the occupancy clause of the insurance contract was a December 2021 recorded statement by EMIII and the residential leases for 2314 and 2316 Rev. John Raphael Jr. Way. These documents are not in the record on appeal. As previously held, "[t]his Court is a court of record and can only review what is contained in the record" on appeal. *PRCP-NS New Orleans, LLC v. Swanson*, 2022-0393, p. 17 (La. App. 4 Cir. 12/16/22), 354 So.3d 239, 249 (citations omitted). *See also Anderson v. Briggs*, 2024-0232, p. 7 (La. App. 4 Cir. 9/20/24), 2024 WL 4284343, at *3 (quoting *JoAnn Place v.*

*Ricard*, 2022-0456, p. 12 (La. App. 4 Cir. 12/27/22), 356 So.3d 518, 527). Even if they were, as the trial court explained, they would not satisfy Bankers' burden of proof on this issue. The existence of the leases and their purported dates of execution indicate that there was a lease in place in advance of the issuance of the insurance policy—they do not establish that the leases were still in effect and that people were occupying 2314 and 2316 Rev. John Raphael Jr. Way at the time of Hurricane Ida in August 2021. Moreover, regarding EMIII's recorded statement, Bankers admitted at the summary judgment hearing that it did not attach to its Motion for Summary Judgment an affidavit indicating the existence of the recorded statement, so the trial court correctly excluded that as a basis for granting summary judgment on the occupancy issue. *See Harris v. Dunn*, 45,619, p. 4 (La. App. 2 Cir. 9/22/10), 48 So.3d 367, 371 (explaining that a recorded statement is not competent summary judgment evidence). The appellate record contains the independent adjuster's report; but even that document does not resolve the occupancy question because it does not definitively establish that any of the units were occupied at the time of loss, i.e., Hurricane Ida, or that occupancy of certain units voided coverage for 2324 Reverend John Raphael Jr. Way. Accordingly, we conclude that there remains a genuine issue of material fact regarding the occupancy issue too, so the trial court correctly denied Bankers' Motion for Summary Judgment on this basis.

## DECREE

For the foregoing reasons, we reverse the trial court's February 12, 2024 judgment, which granted the Motion for Summary Judgment filed by Bankers; dismissed with prejudice all of the claims asserted in reconvention against Bankers

30

by EMIII; and dismissed as moot Bankers' Complaint. We remand this matter for further proceedings.

**REVERSED AND REMANDED**